United States District Court
Southern District of Texas
FILED

FEB 0 4 2004

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| ROMUALDO ARECHAR, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. **B-04-017** |
| | § | |
| SOUTHERN FOODS GROUP, L.P. | § | |
| d/b/a HYGEIA DAIRY, | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S APPENDIX OF ADDITIONAL MATERIALS
## SUPPORTING ITS NOTICE OF REMOVAL

Defendant Southern Foods Group, L.P. d/a/b Hygeia Dairy respectfully submits the

following Appendix of Additional Materials Supporting its Notice of Removal.  Some of the

documents have been highlighted.

---

## Table of Contents

| Tab | Item | Pages[1] |
|-----|------|----------|
| A | ERISA employee welfare benefit plan named the Injury Benefits Plan of Southern Foods Group, L.P., with effective date of January 1, 1995 | SF 001 - 010 |
| B | December 8, 1999 Acknowledgment of Receipt of Summary Plan Description for Injury Benefits Plan of Southern Foods Group, L.P., signed by Plaintiff Romualdo Arechar | SF 011 |
| C | December 8, 1999 Notice pertaining to Southern Foods Group, L.P.'s Injury Benefits Plan, signed by Plaintiff Romualdo Arechar | SF 012 |
| D | Summary Plan Description for Injury Benefits Plan of Southern Foods Group, L.P. | SF 013 - 019 |
| E | December 8, 1999 Notice that Defendant was a non-subscriber, which had discontinued workers' compensation insurance, signed by Plaintiff Romualdo Arechar | SF 020 |
| F | Southern Foods Group, L.P.'s Voluntary Employee Injury Benefits Plan as amended effective August 31, 2002 | SF 021 - 035 |
| G | September 13, 2001 Notice of Employee Separation pertaining to Plaintiff Romualdo Arechar | SF 036 |

---

[1]    References to pages are to bates-stamped numbers on the lower right-hand side of each document.

Respectfully submitted,

George C. Haratsis
Federal ID. No. 27820
Texas Bar No. 08941000
ATTORNEY-IN-CHARGE

Nicholas S. Bettinger
Federal ID. No. 17917
Texas Bar No. 02268470

McDONALD SANDERS,
A Professional Corporation
777 Main Street, Suite 1300
Fort Worth, Texas 76102
(817) 336-8651
(817) 334-0271 Fax

ATTORNEYS FOR DEFENDANT
SOUTHERN FOODS GROUP, L.P.
d/b/a HYGEIA DAIRY

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on the 4 day of February, 2004, a true and correct copy of the foregoing document and its attachments were sent via certified mail, return receipt requested, to Plaintiff's attorney of record, Jorge A. Green, Willette & Guerra, L.L.P., International Plaza, Suite 460, 3505 Boca Chica Boulevard, Brownsville, Texas 78521.

George C. Haratsis

INJURY BENEFITS PLAN

OF

SOUTHERN FOODS GROUP, L. P.

(Amendment of the Injury Benefits Plan of
the Non-Bargaining Unit Employees of
Schepps-Foremost, Inc. and Southern Foods, Inc.)

ARTICLE 1.    PURPOSE.

1.1.    Purpose of Plan.  A corporate reorganization has resulted in the assumption of the Injury Benefits Plan of the Non-Bargaining Unit employees of Schepps-Foremost, Inc. and Southern Foods, Inc. by the reorganized entity, Southern Foods Group, L.P. The purpose of this Plan is to provide eligible Texas employees of Southern Foods Group, L.P., who comply with the requirements specified in this Plan, certain medical and wage continuation benefits in the event such an employee incurs an Injury.   Any payment made by Southern Foods Group, L.P. in connection with the Plan does not constitute an admission of liability on the part of Southern Foods Group, L.P., nor does payment hereunder toll any applicable statute of limitations governing actions by employees against employers.

ARTICLE 2.    DEFINITIONS.

Whenever used herein, the following terms have the following meanings unless a different meaning is clearly required by the context:

2.1.    "Company" means Southern Foods Group, L.P., and its successors.

SF 001

2.2. "Company-Approved Medical Providers" means those medical providers approved by the Plan Administrator to make medical determinations under this Plan.

2.3. "ERISA" means the Employee Retirement Income Security Act of 1974, as amended from time to time.

2.4. "Effective Date" means January 1, 1995.

2.5. "Employee" means any individual employed by the Company in Texas.

2.6. "Injury" means a single incident/occurrence during the course and scope of employment with the Company which results in a physical injury to a Participant. "Injury" does not include pre-existing conditions or any disability resulting when a pre-existing condition first becomes manifest.

2.7. "Participant" means any individual who participates in the Plan in accordance with Article 3.

2.8. "Plan" means the Injury Benefits Plan of Southern Foods Group, L.P., as set forth herein, together with any and all amendments and supplements hereto.

2.9. "Plan Administrator" means the Company acting by and through Earl W. Hollingsworth, Corporate Risk Manager, or his successor in such position. The Plan Administrator is authorized by the Company to change, amend, modify or terminate the Plan as well as supervise the administration of same.

2.10. "Plan Year" means the period beginning on the Effective Date and ending on December 31, 1995, and the 12-month period ending on each December 31 thereafter.

ARTICLE 3.   PARTICIPATION.

3.1.  Commencement of Participation.  Each Texas Employee of Southern Foods Group, L.P. becomes eligible to participate in the Plan from the date they are first employed.

3.2.  Cessation of Participation.  A Participant will cease to be a Participant as of the earlier of (a) the date on which the Plan terminates or (b) the date on which such Participant ceases to be an Employee eligible to participate under Section 3.1.

3.3.   Reinstatement of Former Participant.   A former Participant will become a Participant again if and when such former Participant meets the eligibility requirements of Section 3.1.

ARTICLE 4.   REQUIREMENTS TO BEGIN TO RECEIVE BENEFITS.

4.1.  Conditions.  In order to begin to receive the benefits described in Article 5, a Participant must:

(a)   incur an Injury that is determined by Company-Approved Medical Providers to be a bona fide and legitimate Injury that precludes the Participant from performing employment duties for any employer, light or otherwise; and

(b)   submit to treatment by Company-Approved Medical Providers; and

(c)   submit to drug and alcohol testing immediately (testing must occur within 24 hours of the incident) following the incident which resulted in the Injury with such test showing that the Participant was free (both at the time of the incident in question and at the time of the test) of alcohol and illegal drugs; and

(d)    report the Injury to the Participant's immediate Supervisor or the manager on duty prior to the end of the shift on which the Injury occurred; and

(e)  complete an employee's report of accident form and give such form to his or her immediate Supervisor, or the Manager on duty, within twenty-four (24) hours of the Injury; and

(f)  execute an Assignment of Rights Document that allows the Company to recover monies the Company has paid to, for or on behalf of the injured Participant from the "first funds" received from third parties who may be liable to such Participant for such Participant's Injury, whether such "first funds" be designated for medical benefits, earnings or otherwise.

ARTICLE 5.    **BENEFITS**.

5.1.  **Medical Expenses**.  The Company will pay necessary, reasonable and directly injury-related medical expenses, incurred from Company-Approved Medical Providers in connection with an Injury which qualifies under this Plan for an employee who is eligible to receive benefits under this Plan.  Medical benefits are not available for the treatment of pre-existing conditions.  The names of Company-Approved Medical Providers are available from the Plan Administrator.  Southern Foods Group, L.P. reserves the right to change Company-Approved Medical Providers at any time before or after an injury, with or without notice.

5.2.  **Wage Continuation**.  A Participant will be entitled to receive 80% of the Participant's hourly wage at the time of the

INJURY BENEFITS PLAN OF SOUTHERN FOODS GROUP, L.P. - Page 4

Injury in question (based on a 40-hour week or such shorter time as the employee actually worked, on the average, during the previous four weeks) for a period of two years beginning on the first scheduled work day away from work as authorized by Company-Approved Medical Providers or until such time as the Participant is released by Company-Approved Medical Providers to perform employment duties, light or otherwise, which ever occurs first.  All benefits (wage and medical) under the Plan terminate upon the release by Company-Approved Medical Providers to perform employment duties whether light or otherwise, regardless of whether or not such employee actually returns to work for Southern Foods Group, L.P.

5.3.  Limitation.  Notwithstanding 5.1 and 5.2 above, in no event shall benefits under this Plan for both medical expense reimbursement and wage continuation for any single Injury exceed $100,000.00.

ARTICLE 6.  LOSS OF BENEFITS.

6.1.  Loss of Benefits.  A Participant will lose all future benefits under the Plan if:

(a)  The Participant fails to submit to drug and alcohol testing immediately (testing must occur within 24 hours of the incident) following the incident which resulted in the Injury or if such test fails to show that the Participant was free (both at the time of the incident in question and at the time of the test) of alcohol and illegal drugs; or

(b)   The Participant fails to report the Injury to the Participant's immediate Supervisor or the manager on duty prior to the end of the shift on which the Injury occurred; or

(c)   The Participant fails (at any point in time) to cooperate in the investigation of the Injury, including executing such authorizations as may be needed; or

(d)   It is determined (at any point in time) that the Injury was caused in whole or in part by the Participant's violation of reasonable safety practices, including, but not limited to, the written safety policies of the Company or the engaging in horse play, scuffling, fighting, altercation or any other inappropriate behavior; or

(e)   The Participant refuses (at any point in time) to cooperate with the Plan Administrator in connection with the resolution of the Injury; or

(f)   The Participant fails (at any point in time) to take the advice and/or follow the course of treatment directed by Company-Approved Medical Providers; or

(g)   The Participant, directly or through a representative, makes unreasonable demands, as determined in the sole discretion of the Plan Administrator, upon either the Company or the Plan Administrator for benefits under the Plan or for damages occasioned by the Injury, or otherwise.

ARTICLE 7.  <u>CONTRIBUTIONS</u>.

7.1.  <u>Contributions</u>.  Contributions to the Plan for payment of benefits under the Plan shall be made by the Company out of the Company's general assets.  The amount of contributions to be made to the Plan will directly depend upon the amount of benefits required to be paid pursuant to the terms of the Plan.

ARTICLE 8.  <u>ADMINISTRATION OF PLAN</u>.

8.1.  <u>Plan Administrator</u>.  The administration of the Plan shall be under the supervision of the Plan Administrator.  It shall be a principal duty of the Plan Administrator to see that the Plan is carried out, in accordance with its terms, for the exclusive benefit of persons entitled to participate in the Plan without discrimination among them.  The Plan Administrator will have full power to administer the Plan in all of its details.  For this purpose, the Plan Administrator's powers will include, but will not be limited to, the following authority, in addition to all other powers provided by this Plan:

(a)  to interpret the terms and provisions of the Plan and to decide all questions arising in the administration of the Plan, including, but not limited to, the eligibility of an Employee to participate in the Plan, whether or not an Injury was incurred during the course and scope of employment, the satisfaction of all requirements to begin to receive benefits under the Plan, and all issues relating to the loss of benefits once benefits have commenced, which interpretations, determinations and decisions, subject to any appeal rights

contained in Section 8.3, shall be final, conclusive and binding on all persons claiming benefits under the Plan; and

(b)  to name medical doctors as Company-Approved Medical Providers, and to appoint such agents, counsel, accountants, consultants and other persons as may be required to assist in administering the Plan; and

(c)  to allocate and delegate his or her responsibilities under the Plan and to designate other persons to carry out any of his or her responsibilities under the Plan, any such allocation, delegation or designation to be in writing.

8.2.  <u>Examination of Records</u>.  The Plan Administrator will make available to each Participant such records under the Plan as pertain to the Participant, for examination at reasonable times during normal business hours.

8.3.  <u>APPEAL PROCEDURE FOR DENIAL OF BENEFITS</u>.  The Plan Administrator shall provide adequate notice in writing to any Participant whose claim for benefits under the Plan has been denied by the Plan Administrator.  The Plan Administrator's notice to the Participant shall set forth:

(a)  the specific reason for the denial;

(b)  specific reference to pertinent Plan provisions on which the Plan Administrator based its denial;

(c)  a description of any additional material and information needed for the Participant to perfect the Participant's claim and an explanation of why the material or information is needed; and,

(d)   that any appeal the Participant wishes to make of the adverse determination must be in writing to the Plan Administrator within sixty (60) days after receipt of the Plan Administrator's notice of denial of benefits.   The Plan Administrator's notice must further advise the Participant that the Participant's failure to appeal the action to the Plan Administrator in writing within the sixty (60) day period will render the Plan Administrator's determination final, conclusive and binding.

If the Participant should appeal to the Plan Administrator, the Participant or the Participant's duly authorized representative, may submit, in writing, whatever issues and comments the Participant, or the Participant's duly authorized representative, feels are pertinent.   The Participant, or the Participant's duly authorized representative, may review pertinent Plan documents.   The Plan Administrator shall re-examine all facts related to the appeal and make a final determination as to whether the denial of benefits is justified under the circumstances.   The Plan Administrator shall advise the Participant of his or her decision within sixty (60) days of the Participant's written request for review.   If special circumstances (such as a hearing) would require an extension, the Plan Administrator may obtain such an extension by notifying the Participant in writing within the initial sixty (60) day period that the decision relating to the review of the denial of a claim for benefits will be delayed for up to an additional sixty (60) days, and when a decision can be expected.

INJURY BENEFITS PLAN OF SOUTHERN FOODS GROUP, L.P. - Page 9

ARTICLE 9.    PLAN CHANGES, MODIFICATIONS AND TERMINATION.

9.1.    Plan Changes, Modifications and Termination.    The Plan
does not constitute a contract between the Company and any employee
or Participant.    All changes, amendments or modifications to the
Plan must be in writing; however, the Plan and any and all benefits
contained in the Plan may be changed, amended, modified or
terminated at any time and in any manner by the Company, through
the Plan Administrator, either before or after an Injury occurs and
with or without notice to the employees of the Company.

ARTICLE 10.    MISCELLANEOUS PROVISIONS.

10.1.    Information to Be Furnished.    Participants shall
provide the Plan Administrator with such information and evidence,
and shall sign such documents, as may reasonably be requested from
time to time for the purpose of the administration of the Plan.

10.2.    Limitation of Rights.    Neither the establishment of the
Plan nor any amendment thereof, nor the payment of any benefits
hereunder, will be construed as giving to any Participant or other
person any legal or equitable right against the Company or Plan
Administrator, except as provided herein.

10.3.    Governing Law.    This Plan shall be construed,
administered and enforced according to the laws of the State of
Texas and the United States.



# Oak Farms Dairy

ACKNOWLEDGEMENT OF RECEIPT
<u>INJURY BENEFITS PLANS FOR SOUTHERN FOODS GROUP</u>

I hereby acknowledge receipt of the following form:

**Injury Benefit Plan Summary**

I am fully aware that Oak Farms Dairy, as part of the Southern
Foods Group, is a non-subscriber to Texas Worker's Compensation
and has adopted the above said Injury Benefits Program. I have
been made aware of the proper procedures and conditions applying
to both the wage and medical portion of this plan. I recognize
that I am responsible for understanding and working in accordance
with all of its facets and hereby agree to accept and abide by
this program in the event of a work-related injury during the
extent of my employment.

_Romualdo Brechar_
Print Name Here

_Romualdo Brech_
Signature

_458_ - _61_ - _4626_
Social Security Number

_12-8-99_
Date



**SF 011**

INJURY BENEFITS PLANS (WAGE/MEDICAL) OF
SOUTHERN FOODS GROUP, L.P

You are hereby notified that the undersigned, Southern Foods Group, L.P., has rejected the provisions of the Texas Workers' Compensation Act, and elect to pay damages for personal injuries received by such employees under the common law statutes of this State. Additionally, Southern Foods Group, L.P. has adopted the following Injury Benefits Plans.

## WAGE PLAN

An employee must report his or her on-the-job injury immediately (before the end of shift). An Employee's Report of Injury Form is to be completed in twenty-four (24) hours. Southern Foods Group, L.P. will investigate all on-the-job accidents. If Southern Foods determines, upon its initial investigation, that the accident indeed may have occurred during the course and scope of employment, then Southern Foods will pay the injured employee weekly benefits equal to eighty percent (80%) of the employee's hourly wage at the time of the injury in question (based on a 40-hour week or such shorter time as the employee actually worked, on the average, during the previous four (4) weeks for a maximum of two (2) years, beginning on the first scheduled work day away from work as authorized by Company-Approved Medical Providers to perform employment duties, light or otherwise, whichever first occurs. Wages will be paid in accordance with Southern Foods' regular payroll schedule.

## MEDICAL PLAN

Southern Foods will pay all medical bills from Southern Foods-Approved Medical Providers incurred as a result of the injury (in no event shall benefits under this Plan for both medical expense reimbursement and wage continuation for any injury exceed $100,000.00) subject to conditions below.

CONDITIONS APPLYING TO BOTH PLANS

An employee who is off work due to an on-the-job injury, subject to the Injury Benefits Plan, is not eligible to receive sick pay benefits.

As a condition of receiving benefits under the Plan, it will be necessary for the injury employee to execute an Assignment of Rights Document which allows Southern Foods to recover monies it has paid for or on behalf of the injured employee for his or her injury.

Southern Foods reserves the right (at any point in time) to terminate the above benefits for one or more of the following reasons:

1.     Employee fails to timely report the injury: (before the end of shift)
2.     Employee fails to cooperate in the investigation of the injury;
3.     It is determined that the injury was caused in whole or in part, by the employee's violation of reasonable safety practices, including but not limited to, written safety policies of Southern Foods.
4.     Employee refuses to cooperate with Southern Foods in connection with the resolution of the injury;
5.     Employee fails to take the advice and/or follow the course of treatment directed by medical providers appproved by Southern Foods;
6.     Employee, directly or through a representative, makes unreasonable demands on Southern Foods for benefits, damages, or otherwise.

Southern Foods requires all of its employees to comply with its Drug Testing Policy. Those who fail to comply with the Policy shall be terminated. Any person involved in an on-the-job injury and found to have not been free of alcohol and drugs shall be disqualified from benefits under this Plan.

PAYMENTS OF BENEFITS UNDER THE FOREGOING PLANS DO NOT CONSTITUTE AN ADMISSION OF LIABILITY ON THE PART OF SOUTHERN FOODS. FURTHER, PAYMENT OF ANY BENEFITS UNDER THE FOREGOING PLANS DOES NOT TOLL ANY APPLICATION STATUTE OF LIMITATIONS GOVERNING SUITS BY EMPLOYEES AGAINST EMPLOYERS. FINALLY, THESE BENEFITS ARE NOT CONTRACTUAL AND MAY BE CHANGED AT ANY TIME AS TO ALL EMPLOYEES BY SOUTHERN FOODS BEFORE OR AFTER AN INJURY OCCURS WITH OR WITHOUT NOTICE TO AFFECTED EMPLOYEES. THESE PLANS CAN ONLY BE MODIFIED IN WRITING.

I, _Romualdo Krechar_ , hereby certify that I have read the foregoing plans and all my questions have been fully explained.

_12-8-99_
(date)

_Romualdo Krechar_
(signature)

**SF 012**

# SUMMARY PLAN DESCRIPTION

## FOR

## INJURY BENEFITS PLAN

## OF

## SOUTHERN FOODS GROUP, L.P.

(Amendment of the Injury Benefits Plan
of the Non-bargaining Unit Employees of
Schepps-Foremost, Inc. and Southern Foods, Inc.)

## I.  INTRODUCTION

A corporate reorganization has resulted in the assumption of the Injury Benefits Plan of the Non-bargaining Unit employees of Schepps-Foremost, Inc. and Southern Foods, Inc., by the reorganized entity, Southern Foods Group, L.P.  Further, said Plan is amended as it is hereby adopted by Southern Foods Group, L.P.  Southern Foods Group, L.P. (the "Company") provides eligible Texas Employees medical and wage continuation benefits through the Injury Benefits Plan of Southern Foods Group, L.P. ("Plan").  This document provides a summary description of the Plan, and you should refer here first when you have any questions about the Plan.  This summary highlights the important provisions of the official Plan document.  However, the terms of the Plan will control in case of a conflict.

You may examine the Plan document during regular business hours at the Plan Administrator's office and obtain a copy of the Plan by written request to the Plan Administrator.  You may be charged a small fee to cover copying costs.

You should read the Summary Plan Description carefully as it gives you a detailed description of your Plan, how it works, what benefits it provides, how they may be obtained and how they may be lost.  If the summary does not answer your questions or if you need further information, contact the Plan Administrator.

## II.  BASIC INFORMATION

|  |  |  |
|---|---|---|
| 1. | **Plan Name:** | The official name of the Plan is the Injury Benefits Plan of Southern Foods Group, L.P. |
| 2. | **Plan Sponsor:** | Southern Foods Group, L.P.<br>3114 S. Haskell<br>Dallas, Texas  75223<br><br>(214) 824-8163 |

SF 013

3.  Plan Sponsor's
    IRS Employer
    Identification
    Number:                     75-2571364

4.  Plan Number:                508

5.  Type of Plan:               The Plan is a welfare benefit
                                plan providing medical and wage
                                continuation benefits.

6.  Plan Administrator:         The Plan Administrator is Earl
                                W.  Hollingsworth,  Corporate
                                Risk Manager, or his successor
                                in such position.   The Plan
                                Administrator    decides    all
                                matters concerning eligibility
                                for      participation,
                                determination of benefits, and
                                all  other  questions  that  may
                                arise during the operation of
                                the Plan.  The business address
                                and business telephone number
                                of the Plan Administrator is as
                                follows:

                                3114 S. Haskell
                                Dallas, Texas  75223

                                (214) 824-8163

7.  Trustee:                    The Plan is a non-trusteed,
                                unfunded plan.

8.  Agent for Service           Southern Foods Group, L.P.
    of Legal Process:           Attn: Earl W. Hollingsworth
                                3114 S. Haskell
                                Dallas, Texas  75223

                                Service of legal process may be
                                made on the Plan Administrator.

9.  Plan Year:                  Plan  financial  records  are
                                maintained on a Plan Year basis
                                which begins on each January 1
                                and  ends  on  the  following
                                December 31.

SF 014

III. <u>ELIGIBILITY REQUIREMENTS AND DESCRIPTION OF BENEFITS</u>

A Texas employee of the Company is eligible to participate from inception of employment.

An eligible Texas employee ("Participant") is entitled to receive benefits under the Plan if each of the following conditions are met:

(1)  It is determined that the Plan Participant incurred an injury, meaning a single incident/occurrence during the course and scope of employment with the Company which results in a physical injury to a Participant.  Injury does not include pre-existing conditions or any disability resulting when a pre-existing condition first becomes manifest;

(2)  The Participant must incur an Injury that is determined by Company-Approved Medical Providers to be a bona fide and legiti-mate Injury that precludes the Participant from performing employment duties for any employer, light or otherwise;

(3)  The Participant must submit to treatment by Company-Approved Medical Providers.

(4)  The Participant must submit to drug and alcohol testing immediately (testing must occur within 24 hours of the incident) following the incident which resulted in the Injury with such test showing that the Participant was free (both at the time of the incident in question and at the time of the test) of alcohol and illegal drugs;

(5)  The Participant must report the Injury to the immediate Supervisor or the Manager on duty prior to the end of the shift on which the Injury occurred;

(6)  The Participant must complete an employee's report of accident form and give such form to his or her immediate Supervisor or the Manager on duty within twenty-four (24) hours of the Injury; and

(7)  The Participant must execute an Assignment of Rights Document that allows the Company to recover monies the Company has paid to, for or on behalf of the injured Participant from the "first funds" received from third parties who may be liable to such Participant for such Participant's Injury, whether such "first funds" be designated for medical benefits, earnings or otherwise.

The Company will pay necessary, reasonable and directly injury related medical expenses, incurred from Company-Approved Medical Providers in connection with an injury which qualifies under the Plan for an employee who is eligible to receive benefits under the Plan.  Medical benefits are not available for the treatment of pre-existing conditions.  A Participant who is in full compliance with the Plan will be eligible to receive 80% of the Participant's

SF 015

hourly wage at the time of the Injury in question (based on a 40-hour week or such shorter time as the employee actually worked during the previous four weeks) for a period of two years, beginning on the first scheduled work day away from work as authorized by Company-Approved Medical Providers or until such time as the Participant is released by Company-Approved Medical Providers to perform employment duties, light or otherwise, whichever first occurs. Wage and medical benefits under the Plan terminate upon the release by Company-Approved Medical Providers to perform employment duties whether light or otherwise, regardless of whether or not the Participant actually returns to work for Southern Foods Group, L.P. In no event shall benefits under this Plan for both medical expense reimbursement and wage continuation for any Injury exceed $100,000.00.

A Participant will lose all future benefits under the Plan if:

   (a)  The Participant fails to submit to drug and alcohol testing immediately (testing must occur within 24 hours of the incident) following the incident which resulted in the Injury or if such test fails to show that the Participant was free (both at the time of the incident in question and at the time of the test) of alcohol and illegal drugs; or

   (b)  The Participant fails to report the Injury to his or her immediate supervisor or to the Manager on duty prior to the end of the shift on which the Injury occurred; or

   (c)  The Participant fails (at any point in time) to cooperate in the investigation of the Injury, including executing such authorizations as may be needed; or

   (d)  It is determined (at any point in time) that the Injury was caused in whole or in part by the Participant's violation of reasonable safety practices, including, but not limited to, the written safety policies of the Company or the engaging in horse play, scuffling, fighting, altercation or any other inappropriate behavior; or

   (e)  The Participant refuses (at any point in time) to cooperate with the Plan Administrator in connection with the resolution of the Injury; or

   (f)  The Participant fails (at any point in time) to take the advice and/or follow the course of treatment directed by Company-Approved Medical Providers; or

   (g)  The Participant, directly or through a representative, makes unreasonable demands, as determined in the sole discretion of the Plan Administrator, upon either the Company or the Plan Administrator for benefits under the Plan or for damages occasioned by the Injury, or otherwise.

**SF 016**

## IV.   CONTRIBUTIONS

Contributions to the Plan for payment of benefits shall be made by the Plan Sponsor out of the Plan Sponsor's general assets. The amount of contributions to be made to the Plan will directly depend upon the amount of benefits required to be paid pursuant to the terms of the Plan.

## V.   PLAN CHANGES, MODIFICATIONS AND TERMINATION

The Plan is not a contract between a Plan Sponsor and any Employee or Participant. All changes or modifications to the Plan must be in writing; however, the Plan and any and all benefits contained in the Plan may be changed, amended, modified or terminated at any time and in any manner by the Plan Administrator either before or after an on-the-job injury occurs and with or without notice to the Employees of the Plan Sponsor.

## VI.   CLAIMS PROCEDURE

The Plan Administrator determines the right of a Participant to a benefit. If a Participant does not receive a benefit to which such Participant believes the Participant is entitled, the Participant may file a written claim with the Plan Administrator. The Plan Administrator will process such Participant's claim and notify the Participant in writing of his or her decision within a reasonable time, normally within 90 days after the Participant submitted such Participant's written claim. When the Plan Administrator requires additional time (up to an additional 90 days) to process such Participant's claim because of special circumstances, he or she may obtain an extension by notifying the Participant within the initial 90-day period that a decision on the claim will be delayed and when a decision can be expected. If the Participant's claim is denied, the Participant will receive a written explanation of the specific findings and conclusions on which the denial is based.

If the Participant does not agree with the Plan Administrator's decision, the Participant or such Participant's authorized representative may appeal in writing within 60 days after the Participant receives the decision.: The Plan Administrator will review the decision and issue a final written decision, normally within 60 days after the receipt of the Participant's appeal, specifying the reasons for his or her decision. If special circumstances require an extension, the Plan Administrator may obtain such extension by notifying the Participant within the initial 60-day period that the decision relating to the review of the denial of a claim for benefits will be delayed (for up to an additional 60 days), and when a decision can be expected.

The claim and appeal procedures are available to any Participant or beneficiary who wishes to submit a claim for a benefit or request an appeal. The decision of the Plan Administrator is final, conclusive and binding as to any fact or interpretation relating to the Plan.

VII.  <u>RIGHTS UNDER ERISA</u>

As a Participant of the Plan, **each Participant is entitled to** certain rights and protections under the **Employee Retirement Income Security Act of 1974 (ERISA)**. This law provides that all Participants shall be entitled to:

1. examine, without charge, at the Office of the Plan Administrator (and at other specified locations, if appropriate), all plan documents, including copies of all documents filed by the Plan with the U.S. Department of Labor, such as detailed annual reports and Plan descriptions;

2. obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies;

In addition to creating rights to Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the Plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of the Participants and beneficiaries.

No one, including the Participants or any other person, may fire a Participant or otherwise discriminate against a Participant in any way to prevent you from obtaining a benefit under the Plan or exercising your rights under ERISA.

If a Participant's claim for a benefit is denied in whole or in part, such Participant must receive a written explanation of the reason for the denial. Such Participant has the right to have the Plan Administrator review and reconsider such Participant's claim.

Under ERISA, there are steps a Participant can take to enforce the above rights. For instance, if a Participant requests materials from the Plan Administrator and does not receive them within 30 days, such Participant may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and pay the Participant up to $100 a day until such Participant receives the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If a Participant has a claim for benefits which is denied or ignored, in whole or in part, a Participant may file suit in a state or federal court. If it should happen that Plan fiduciaries misuse the Plan's money, or if a Participant is discriminated against for asserting such Participant's rights, a Participant may seek assistance from the U.S. Department of Labor, or a Participant may file suit in a federal court. The court will

SF 018

decide who should pay court costs and legal fees.  If a Participant is successful, the court may order the person such Participant has sued to pay these costs and fees.  If a Participant loses, the court may order such Participant to pay these costs and fees, for example, if it finds such Participant's claim is frivolous.

If a Participant has any questions about the Plan, such Participant should contact the Plan Administrator.  If a Participant has any questions about this statement or about such Participant's rights under ERISA, such Participant should contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

AGT/tba
C:\DATA\002989\000001\SUMMARY.PD

# IMPORTANT NOTICE

**TO ALL EMPLOYEES:**

In accordance with the Workers' Compensation Law of Texas, all employees are hereby notified that this company has discontinued Workers' Compensation Insurance.

In case of injury on the job:

1. Report immediately to your supervisor,
2. If necessary, go to company doctor or hospital,
3. Notify the company of expected recovery time,
4. Complete company accident report,
5. Do not return to work until doctor releases you.

No payments of any kind will be made in connection with an injury that is not clearly sustained on the job and reported at the time to the supervisor.

Any payments for medical bills and lost-time benefit for a just claim are made on a voluntary basis with the definite understanding that such payments in no way constitute admission of liability on the part of the company.

COMPANY: ___OAK FARMS DAIRY_____

BY: _____

EMPLOYEE SIGNATURE: _____

DATE: ___12-8-99_____



**SF 020**

SOUTHERN FOODS GROUP, L.P.

VOLUNTARY EMPLOYEE INJURY BENEFITS PLAN

Amended Effective August 31, 2001



SF 021

SOUTHERN FOODS GROUP, L.P.

VOLUNTARY EMPLOYEE INJURY BENEFITS PLAN

## ARTICLE I.

### AMENDMENT OF PLAN

1.1    Amendment of Plan.  Southern Foods Group, L.P. (the "Company") hereby amends and renames the Injury Benefits Plan of Southern Foods Group, L.P. to become the Southern Foods Group, L.P. Voluntary Employee Injury Benefits Plan (the "Plan"), effective August 31, 2001.

1.2    Purpose.  The purpose of this Plan is to provide eligible Texas employees of the Company who comply with the requirements specified in this Plan, certain medical and wage continuation benefits in the event of an on-the-job injury during the time this Plan is in effect.  No payments under the Plan are to be construed as an admission of liability on the part of the Company and, further, no payment of such benefits shall result in a tolling of any statute of limitations governing lawsuits by employees against employers for on-the-job injuries.

1.3    Compliance With Law: Interpretation.  This Plan is intended to be an employee welfare benefit plan under the Employment Retirement Income Security Act of 1974, as amended ("ERISA"), and all regulations issued under ERISA. References to any section of ERISA shall be deemed to include similar sections of ERISA as renumbered or amended.  The Plan shall be governed by and interpreted, administered, and managed in compliance with those requirements. To the extent not superseded or preempted by federal law, the Plan shall also be governed by and interpreted, administered, and managed in compliance with the laws of the State of Texas.

## ARTICLE II.

### DEFINITIONS

2.1    **"Accident"** means an event which:
    a.    was unforeseen, unplanned and unexpected;
    b.    occurred at a specifically identifiable time and place;
    c.    resulted in physical injury; and
    d.    arose out of the Employee's Scope of Employment.

2.2    **"Average Weekly Wage"** means the average of a Participant's most recent four (4) weeks of gross pay received while working for the Company.  If a Participant has been employed by the Company for less than four (4) weeks on the date of a

**SF 022**

Bodily Injury, that Participant's Average Weekly Wage will be the average of that Participant's gross pay for all weeks prior to the date of the Bodily Injury.

2.3 **"Bodily Injury"** means an identifiable physical injury, including resulting death, caused by an Accident. Bodily injury does not include:
A.  an Occupational Disease or Cumulative Trauma;
B.  pre-existing conditions or complications of pre-existing conditions;
C.  a heart attack, unless the heart attack was proximately caused by and arose out of an Accident;
D.  stroke and related conditions;
E.  degenerative diseases and conditions;
F.  conditions related to stress;
G.  an Employee's voluntary participation in any recreational, social or athletic activity not constituting part of the Employee's Scope of Employment, or while the Employee is on vacation or on leave of absence;
H.  any Bodily Injury occurring prior to the Effective Date.

2.4 **"Company"** means Southern Foods Group, L.P., a Delaware limited partnership, with its principal place of business located at 3114 S. Haskell Avenue, Dallas, Texas, 75223, or any affiliate or successor thereof that subsequently adopts the Plan.

2.5 **"Company-Approved Medical Care Provider"** means Physicians, Nurses, Hospitals, Therapists, and Diagnostic Facilities that are approved by the Company's Injury Benefits Department prior to the provision of treatment to a Participant, unless emergency circumstances make preapproval infeasible. The Injury Benefits Department has the sole discretion to designate Company-Approved Medical Care Providers.

2.6 **"Cumulative Trauma"** means damage to the physical structure of the body occurring as a result of repetitious, physically traumatic activities that occur in the Scope of Employment.

2.7 **"Diagnostic Facility"** means an institution that provides medical diagnostic testing at the request of a Physician approved by the Company for the care and treatment of a Participant. A Diagnostic Facility can include a Hospital.

2.8 **"Disease"** means a condition marked by a pronounced deviation from the normal healthy state or normal pregnancy of an Employee.

2.9 **"Effective Date"** means August 31, 2001.

2.10 **"Employee"** means any individual employed in the regular business of the Company and who receives his pay on a regular basis by means of a salary or wage directly from the Company. Employee does not include an independent

**SF 023**

contractor, third-party agent, or any person employed through a temporary employment service.

2.11   **"ERISA"** means the Employee Retirement Income Security Act of 1974, as amended from time to time.

2.12   **"Hospital"** means a lawful institution which:
    A.   is licensed as a hospital (if required in its location); and
    B.   is open at all times; and
    C.   functions chiefly for the care and treatment of sick and injured persons as admitted in-patients; and
    D.   has a staff of one or more licensed physicians present at all times; and
    E.   provides 24-hour services of nurses; and
    F.   has on its premises or available on a prearranged basis, organized facilities for diagnosis and major surgery.

2.13   **"Medical expense"** means an expense incurred by a Participant for medical services, procedures or supplies from Company-Approved Medical Care Providers. The services, procedures and supplies must be Medically Necessary for treatment of the Participant, and the charges must be Usual and Customary. Medical expense shall include confinement within a Hospital and shall also include the cost of medically necessary supplies and ambulance hire. Medical expense does not include expenses incurred for:
    A.   biofeedback and other forms of self-care or self-help training or any related diagnostic testing;
    B.   hypnosis, acupuncture or chiropractic care;
    C.   the purchase, rental or repair of environmental control devices including but not limited to air conditioners, humidifiers, dehumidifiers or air purifiers; or
    D.   services performed by a Participant's spouse, parent, child, sibling, or any person who normally lives with the Participant.

2.14   **"Medically Necessary"** means medical services, procedures or supplies which are:
    A.   required, recognized and professionally accepted nationally by physicians as the usual, customary and effective means of diagnosing or treating the condition; and
    B.   the most economical supplies or levels of service that are appropriate and available for the safe and effective treatment of the Participant; and
    C.   not primarily for the convenience of the Participant, the Participant's family or the Participant's physician or other provider of medical services, supplies or procedures.

2.15   **"Nurse"** means a Registered Nurse (R.N.); Licensed Practical Nurse (LPN); Licensed Vocational Nurse (LVN) currently licensed in the state of Texas, practicing within the scope of such license.

**SF 024**

2.16    **"Occupational Disease"** means a Disease arising out of an Employee's assigned duties in his Scope of Employment that causes damage or harm to the physical structure of the body, including other Diseases or infections that naturally result from the work-related Disease.

2.17    **"Participant"** means any Employee of the Company in the state of Texas.

2.18    **"Physician"** means a duly qualified physician who is legally licensed to practice medicine in the state where the service is performed.

2.19    **"Plan"** means the Southern Foods Group, L.P. Voluntary Employee Injury Benefits Plan, as set forth herein, together with any and all amendments and supplements hereto.

2.20    **"Plan Administrator"** shall refer to the Corporate Risk Manager of Southern Foods Group, L.P. Paul Penny is the current Corporate Risk Manager.

2.21    **"Plan Year"** means January 1 to December 31.

2.22    **"Scope of Employment"** means an activity of any kind or character that has to do with and originates in the Company's business and that is performed by an Employee while engaged in or about the furtherance of the Company's business including activities conducted on Company premises or at other locations. Scope of Employment does not include an Employee's transportation to and from his place of employment, unless:
   A.    the transportation is furnished as a part of the contract of employment, or is paid for by the Company, or the means of such transportation are under the Company's control; or
   B.    the Employee is directed in his Scope of Employment to proceed from one place to another place.

2.23    **"Usual and Customary"** means the expense is:
   A.    usual when it is the fee regularly charged (and which the patient is responsible to pay) in the absence of insurance or other third party reimbursement, by a health care provider or physician for a given treatment, service or supply; and
   B.    customary in relation to what other physicians and health care providers in the same geographic area charge for the same and similar treatment, service or supply.

## ARTICLE III.

### ELIGIBILITY FOR BENEFITS

3.1   Determining Eligibility.  A Participant becomes eligible for benefits under the Plan if the Participant suffers a Bodily Injury.  The Plan Administrator has the sole authority to determine what constitutes a Bodily Injury.

3.2   Eligibility Requisites.  Once it is determined that a Participant is eligible for benefits under the Plan, the Participant must satisfy the following prerequisites before benefits will commence:

A.   Notice.  The Bodily Injury must be reported to the Participant's immediate supervisor or manager on duty prior to the end of the shift during which the Bodily Injury occurred;

B.   Written Report.  A Participant must complete and sign a written incident report as soon as is practicable, but in no event longer than twenty-four (24) hours after the Accident;

C.   Medical Care.  The Participant must submit to the medical care of Company-Approved Medical Care Providers, or such other medical care providers to whom the Participant is referred with the approval of the Company; and

D.   Drug/Alcohol Testing.  As soon as is practicable, but in no event longer than twenty-four (24) hours after the Accident, the Participant must submit to post-accident drug and alcohol testing, with such tests showing that the Participant was not, either at the time of the Accident or at the time of the test, under the influence of alcohol or any chemical substance not lawfully available or consumed in accordance with the Controlled Substances Act in force at the time of the Accident.

## ARTICLE IV.

### BENEFITS

4.1   Benefits.  The Company will provide the following benefits to Participants.

A.   **Medical Benefits**.  The Company will pay 100% of Medical Expenses for treatment of a Participant's Bodily Injury to the extent that such charges are not compensable under any other plan or benefit available to the Participant.  Medical benefits are subject to the following provisions:

1.   In order to be covered under this Plan, medical treatment must be provided by Company-Approved Medical Care Providers.  If

**SF 026**

treatment by a specialist is determined to be Medically Necessary, such treatment must be provided by the specialist to whom the Participant is referred by the Company-Approved Medical Care Provider, with such specialist also being approved by the Company. If the Participant incurs charges for medical care from providers other than Company-Approved Medical Care Providers, such charges are not compensable under this Plan.

2.   Pharmaceuticals prescribed for a Participant by a Company-Approved Physician must, if available, be obtained from a pharmacy approved by the Company.

3.   Medical benefits will only be provided for treatment that is Medically Necessary. At the discretion of the Plan Administrator, a Participant can be required to have an examination or examinations by additional Company-Approved Medical Care Providers for, among other reasons, additional opinions on whether certain treatment is Medically Necessary.

4.   If emergency medical attention is needed, a Participant must seek treatment at a Company-Approved Hospital. If the circumstances make treatment at a Company-Approved Hospital impractical, the Participant must submit to the care of Company-Approved Medical Care Providers for all subsequent treatment in order for such Medical Expenses to be covered under the Plan.

B.   **Wage Continuation Benefits.** The Company will pay wage continuation for a Participant who is entitled to benefits under this Plan and who, according to a Company-Approved Medical Care Provider, is unable to perform employment duties for the Company directly because of the Participant's Bodily Injury. Wage continuation will be paid, as follows:

1.   Wage continuation will be maintained at 100% of the Participant's salary or wage rate for the balance of the workday on which the Accident occurred.

2.   Thereafter, wage continuation will be paid at 80% of the Participant's Average Weekly Wage, beginning on the first scheduled workday away from work as directed by Company-Approved Medical Care Providers.

3.   Wage continuation will be calculated on a weekly basis, and paid on regular paydays. Wage continuation for a partial work week will be calculated using the Participant's Average Weekly Wage, prorated for the number of days off work. Only the Participant's regularly scheduled workdays will be used to calculate wage continuation for a partial work week.

4.   Wage continuation shall only be paid while the Participant is off work pursuant to instructions from a Company-Approved Medical Care Provider.

**SF 027**

5.      The Company will deduct, from all wage continuation payments, amounts for payroll taxes, F.I.C.A., and all other deductions required by law or elected by the Participant.

4.2    <u>Limitation on Benefits</u>.  Notwithstanding any other provision of this Plan:

A.      The total of all benefits under this Plan shall not exceed $100,000.00 for any one Accident, regardless of the number of Employees involved in the Accident.

B.      A Participant is not entitled to receive wage continuation benefits concurrently for more than one Bodily Injury.

C.      Medical benefits cease when a Company-Approved Medical Care Provider determines that the Participant has reached maximum medical improvement from his/her Bodily Injury.

D.      Wage continuation benefits cease at the <u>earlier</u> of:

1.      the date on which the Participant is released by a Company-Approved Medical Care Provider to perform the essential functions of the Participant's job prior to the Bodily Injury, with or without reasonable accommodation; or

2.      the date on which the Participant is released by a Company-Approved Medical Care Provider to perform restricted-duty work at the Company which such provider has found that the Participant is physically able to perform; or

3.      two (2) years from the date of the Accident that caused the Participant's Bodily Injury.

4.3    <u>Coordination of Benefits</u>.  All benefits due under this Plan shall be paid only to the extent not compensable under any other plan or program, governmental or otherwise, available to the Participant.  For the purposes of this paragraph, "compensable" shall mean that the Participant is eligible for benefits under another plan or program, regardless of whether that plan or program is actually paying such benefits.  Further, to the extent that a Participant receives benefits under any other plan or program, governmental or otherwise, the corresponding benefits under this Plan will be reduced by the amount of the benefits paid to or on behalf of the Participant under such other plan or program.

SF 028

# ARTICLE V.

## CESSATION OF BENEFITS; EXCLUSIONS

5.1    <u>Cessation of Benefits</u>.  Plan benefits to a Participant will cease if:

A.    it is determined that the Participant did not comply with the requirements of Section 3.2 above; or

B.    the Participant fails at any point in time to cooperate in the investigation of the Accident and/or Bodily Injury, including executing such authorizations, releases and/or assignments as may be required by the Company from time to time; or

C.    the Participant fails to cooperate with a Company-Approved Medical Care Provider including, but not limited to, failing to cooperate with or follow such medical care provider's treatment plan, failing to attend any scheduled appointment, or engaging in any activity (either off or on Company premises) which is contrary to limitations placed on the Participant by a Company-Approved Medical Care Provider; or

D.    the Participant fails to return to work for either regular duty or modified duty after a Company-Approved Medical Care Provider has given the Participant a work release; or

E.    the Participant fails to contact his or her supervisor or manager on Monday of each week to advise of the Participant's status of treatment and anticipated recovery period; or

F.    it is determined at any point in time that the Bodily Injury was caused in whole or in part by the Participant's intentional or reckless violation of reasonable safety practices including, but not limited to, the written safety policies of the Company; or

G.    the Participant directly, or through a representative, makes unreasonable demands as determined in the sole discretion of the Company upon either the Company, its representatives, or the Plan Administrator for benefits under the Plan or otherwise; or

H.    the Participant fails to timely execute a partial assignment of rights as provided in section 10.4 below; or

I.    the Participant releases a Third Party in violation of section 10.4 below.

5.2    <u>Exclusions</u>.  In addition to the other exclusions and limitations set forth in this Plan, no benefits are provided under this Plan for the following:

**SF 029**

A.    a Bodily Injury resulting from participation by the Employee in a criminal act; or

B.    an intentionally self-inflicted Bodily Injury, while either sane or insane; or

C.    a Bodily Injury occurring while the Employee was under the influence of illegal drugs or alcohol; or

D.    a Bodily Injury occurring as a result of horseplay or fighting by the Employee; or

E.    a Bodily Injury resulting from an Employee's participation in:

1.    a riot or act of civil disturbance; or
2.    an assault or a felony, except an assault committed in defense of the Company's business or business property; or
3.    a war, declared or undeclared; or
4.    any act of war; or
5.    service in the military of any country or any civilian non-combatant unit serving with such forces.

## ARTICLE VI.

### FUNDING

6.1    <u>Employer Contributions</u>.  The Company will pay all benefits due under this Plan from its general assets.  The amount of contributions to be made to the Plan will directly depend upon the amount of benefits required to be paid pursuant to the terms of the Plan.

6.2    <u>Participant Contributions</u>.  No Participant contribution is required by this Plan.

## ARTICLE VII.

### CLAIMS PROCEDURE

7.1    <u>Claim for Benefits</u>.  In order to make a claim for benefits under this Plan, the Participant must comply with Article III, Section 3.2, and the Participant must execute all necessary releases and authorizations required by the Plan Administrator and this Plan.  A Participant shall be notified of the approval or disapproval, in accordance with the provisions of this Plan.

A.    <u>Claims Evaluation</u>.  A decision shall be made on all claims no later than 90 days after the receipt of the claim, unless special circumstances require an extension of time for processing the claim.  If an extension of time is

**SF 030**

required, written notice of the extension shall be furnished to the Participant prior to the expiration of the initial 90-day period. The written notice shall specify the special circumstances requiring an extension and the date on which a final decision will be reached (not later than 180 days after the date on which the claim was filed).

B.    Approval of Claim. If a claim is approved, payment of Benefits shall be made as soon as practicable.

C.    Denial of Claim. If a claim is denied, in whole or in part, the Participant shall be given a written statement that shall contain (i) the specific reasons for the denial, (ii) references to pertinent Plan provisions on which the denial is based, (iii) a description of any additional material or information necessary to perfect the claim and an explanation of why the material or information is necessary, (iv) the Participant's rights to seek review of the denial and the procedure to follow in seeking review, and (v) the name and address of the person to whom the request for review shall be submitted. The notice of claim denial shall be written in a manner calculated to be understood by the Participant.

7.2    Review of Claim Denial. If a claim for payment or reimbursement is denied, in whole or in part, the Participant shall have the right to request a review of the denied claim. If a Participant fails to file a request for review in accordance with the procedures outlined below, the Participant shall have no right to review, shall have no right to bring an action in any court, and the denial of the claim shall become final and binding on all persons for all purposes.

A.    Request for Review. To request review, the Participant must file a written request for review within sixty (60) days after the date on which the Participant received the written notice of claim denial. The request for review shall be addressed to the person designated in the written claim denial. The Participant (or the Participant's duly authorized representative) may review pertinent documents and submit issues and written comments in the request for review.

B.    Administrative Review. Within sixty (60) days after a request for review is received, the review shall be made and the Participant shall be advised in writing of the decision on review, unless special circumstances require an extension of time for processing the review, in which case the Participant shall be given a written notification within the initial sixty (60) day period specifying the reasons for the extension and when the review shall be completed (provided that the review shall be completed within 120 days after the date on which the request for review was filed).

C.    Administrative Decision. The decision on review shall be forwarded to the Participant in writing, shall be written in a manner calculated to be

**SF 031**

understood by the Participant, and shall include specific reasons for the decision and references to Plan provisions upon which the decision is based.

7.3    Payments by Administrator. A payment made under this Section shall fully discharge the Company and the Plan Administrator from all future liability with respect to the payment.

A.    Incapacity. If a person entitled to payment is legally, physically, or mentally incapable of receiving or acknowledging payment, the Plan Administrator may, at the Administrator's discretion, direct payment in any one or more of the following ways: directly to the person; to the person's legal representative; to a spouse, child or relative by blood or marriage of the person; to the person with whom the person resides; or by expending the payment directly for the benefit of the person. A payment made other than to the person entitled to payment shall be used for the person's exclusive benefit.

B.    Legal Representative. The Plan Administrator shall not be required to commence probate proceedings or secure the appointment of a legal representative.

## ARTICLE VIII.

## ADMINISTRATION

8.1    Plan Administrator. The administration of the Plan shall be under the supervision of the Plan Administrator. It shall be a principal duty of the Plan Administrator to see that the Plan is carried out, in accordance with its terms, for the exclusive benefit of persons entitled to participate in the Plan without discrimination among them. The Plan Administrator will have full power to administer the Plan in all of its details. For this purpose, the Plan Administrator's powers will include, but will not be limited to, the following authority, in addition to all other powers provided by this Plan:

A.    to interpret the terms and provisions of the Plan and to decide all questions arising in the administration of the Plan, including, but not limited to, the eligibility of an Participant to participate in the Plan, whether or not a Bodily Injury, was incurred during the Scope of Employment, the satisfaction of all requirements to begin to receive benefits under the Plan, and all issues relating to the loss of benefits once benefits have commenced, which interpretations, determinations and decisions, subject to any appeal rights contained in Section 7.2, shall be final, conclusive and binding on all persons claiming benefits under the Plan; and

      B.      to select Company-Approved Medical Care Providers for provision of medical treatment to Participants, and to appoint such agents, counsel, accountants, consultants and other persons as may be required to assist in administering the Plan; and

      C.      to allocate and delegate his or her responsibilities under the Plan and to designate other persons to carry out any of his or her responsibilities under the Plan, any such allocation, delegation or designation to be in writing; and

      D.      all other responsibilities conferred by ERISA upon the "administrator" as defined in Section 3(16) of ERISA; and

      E.      all other powers and duties with respect to the operation and management of the Plan conferred upon the Administrator by this Plan and which are necessary and appropriate thereto, except those powers and duties allocated to another named fiduciary in this Plan.

8.2      <u>Examination of Records.</u>  The Plan Administrator will make available to each Participant such records under the Plan that pertain to the Participant, for examination at reasonable times during normal business hours.

## ARTICLE IX.

### AMENDMENT AND TERMINATION OF PLAN

9.1      <u>Amendment</u>.  The Company, by resolution of its board of directors, may, in its sole and final discretion, amend, modify, change or revise the Plan or any benefit provided under the Plan at any time; provided that no amendment shall deprive a Participant of benefits incurred or accrued prior to the date of any amendment, modification, change or revision.  Each amendment, modification, change or revision shall be in writing and signed by an authorized representative of the Company.

9.2      <u>Termination</u>.  The following provisions shall apply to termination of the Plan:

      A.      <u>Discretionary</u>.  Even though the Company intends this Plan to be a permanent and continuing benefit program, the Company may discontinue or terminate this Plan or any benefit provided under this Plan at any time.

      B.      <u>Mandatory</u>.  The Plan shall terminate upon liquidation or discontinuance of the Company's business, the adjudication of the Company as bankrupt, or a general assignment by the Company to or for the benefit of its creditors.

      C.      <u>Change of Form</u>.  Unless continued, the Plan also shall terminate upon the merger or consolidation of the Company into another entity which is

the survivor, the consolidation or other reorganization of the Company, or the sale of substantially all of the Company's assets.

9.3    No Vesting. There are no vested rights to future benefits under this Plan. A Participant's right to benefits is limited to covered benefits incurred or accrued prior to the date of any Plan termination, amendment, modification, change or revision.

# ARTICLE X.

## MISCELLANEOUS PROVISIONS

10.1    Nonalienation of Benefits. Benefits shall not be subject in any manner to sale, transfer, assignment or pledge, either voluntary or involuntary, prior to actually being received by the person entitled to the benefit under the terms of the Plan. Any attempt by a Participant to sell, transfer, assign, pledge, or otherwise dispose of any right to benefits payable hereunder, shall be void.

10.2    Effect Upon Employment Relationship. No Participant shall have a right or claim under the Plan except in accordance with its provisions. The adoption of the Plan shall not be construed as creating a contract of employment between the Company and a Participant or otherwise conferring upon a Participant or other person a legal right to continuation of employment, nor shall it limit or qualify the right of the Company to discharge or retire a Participant.

10.3    No Interest in Employer Assets. Nothing in the Plan shall be construed to give a Participant or a Participant's beneficiary any interest in the Company's assets or business affairs or the right to examine the Company's books and records.

10.4    Acts of Third Parties/Subrogation. If at any time it is determined by the Plan Administrator that a Bodily Injury to a Participant was caused, in whole or in part, by the acts or omissions of a person or entity ("Third Party") not employed by the Company, the Participant shall be required to execute a Partial Assignment of Rights and Subrogation Agreement to be provided to the Plan Administrator. The Partial Assignment of Rights and Subrogation Agreement shall entitle the Plan to obtain full reimbursement for benefits paid to or on behalf of the · Participant from the Third Party whose acts or omission caused, in whole or in part, the Bodily Injury to the Participant. The Partial Assignment of Rights and Subrogation Agreement shall entitle the Plan to receive reimbursement from the Third Party, as well as any person or entity providing insurance or indemnification to the Third Party. A Participant shall not release any claims against a Third Party resulting from a Bodily Injury to the Participant unless the Company's subrogation rights under this paragraph are adequately protected.

**SF 034**

IN WITNESS WHEREOF, Southern Foods Group, L.P. has caused this Amended Plan to be executed on this the _____ day of _____, 2001, effective August 31, 2001.

SOUTHERN FOODS GROUP, L.P.

By:    SFG MANAGEMENT LIMITED
       LIABILITY COMPANY, AS GENERAL
       PARTNER

By:    _____
       Eddie K. Tollison

       _____
       Title

SF 035



SEP 2 1 2001

**NOTICE OF EMPLOYEE SEPARATION**



23DP13
4

| Social Security Number:<br>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 | Name:<br>Romualdo ARECHAR | Date:<br>9-13-01 |
| --- | --- | --- |
| Employee File Number:<br>000585 | Employee SS #:<br>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 | Location No.<br>Brownsville |

| ADDRESS CORRECTION | ADDITIONAL INFORMATION | | |
| --- | --- | --- | --- |
| Street Address Line 1<br>1958 Palm Drive | Hire Date<br>7-14-97 | Job Title<br>Route Driver | Accrued Vacation Pay (SV) |
| Street Address Line 2 | Separation Date (S)<br>9-13-01 | Job Code | Severance Pay (SE) |
| | Eligible for Rehire?<br>☐ Yes ☑ No | Paid thru Date | Pay in Lieu of Notice (LN) |
| City<br>MERCEDES | State<br>TX | Zip Code<br>78570 | Employee Owes For: |

**REASON FOR SEPARATION - CHECK APPLICABLE NUMBER AND EXPLAIN IN COMMENTS**

| VOLUNTARY SEPARATION | DISCIPLINARY DISCHARGE |
| --- | --- |
| Attach Resignation Statement to all Voluntary Separations.<br>(   ) Failed to Report for Work<br>(   ) To Accept other Employment*<br>(   ) Dissatisfaction with Job<br>(   ) To Attend School<br>(   ) To Move from Area<br>(   ) Failed to Return from Leave<br>(   ) Other Voluntary Separation<br>(   ) (Use ONLY when situation not described above) | (   ) Excessive Absenteeism/Tardiness<br>(   ) Deliberate Non-Performance<br>(   ) Violation of Company Policy<br>( ✓ ) Other Disciplinary Discharge<br>(Use ONLY when situation not described above)<br><br>SEP 2 6 2001 |

**NON-DISCIPLINARY DISCHARGE**

| | |
| --- | --- |
| (   ) Reduction in Force<br>(   ) Unit Franchised<br>(   ) Not Qualified for Job | (   ) Returned from Leave - No Job Available<br>(   ) Leave Benefits Expired - Employee Still Disabled |

**COMMENTS**

Chargeable + Preventable Accident   DOT Reportable

Accident Date 8-31-01

G

| APPROVALS | FOR DIVISION USE ONLY |
| --- | --- |
| Date<br>9-13-01   Name/Title<br>MANUEL REYES / DIST MGR | Eligible for Rehire     ☐ Yes   ☐ No |
| Date   Name/Title | |
| Date   Name/Human Resources | SF 036 |

PAYROLL INITIAL _____